UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

SHARON RUDD,

      Plaintiff,

v.                                          Case No. 5:16cv325-CJK

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

      Defendant.

_____/

## MEMORANDUM ORDER

      This case is before the court pursuant to 42 U.S.C. § 405(g) for review of the final determination of the Commissioner of Social Security ("Commissioner") denying Sharon Rudd's applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-34, and Supplemental Security Income ("SSI") under Title XVI, 42 U.S.C. §§ 1381-33. The parties consented to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73 for all proceedings in this case, including entry of final judgment. Upon review of the record before the court, I conclude the findings of fact and determinations of the Commissioner are supported by substantial evidence. The decision of the Commissioner, therefore, will be affirmed and the applications for DIB and SSI denied.

## ISSUES ON REVIEW

Ms. Rudd, who will be referred to as claimant, plaintiff, or by name, claims the ALJ erred by: (1) "omitting credited memory limitations from the hypothetical question and residual functional capacity determination"; (2) "discrediting medical opinion evidence for erroneous reasons"; and (3) "finding Plaintiff not credible." (Doc. 25, p. 1).

## PROCEDURAL HISTORY

On December 19, 2012, plaintiff protectively filed applications for DIB and SSI, claiming disability beginning December 15, 2012, due to pain, fatigue, spinal problems, anxiety, depression, headaches, regulation of movements, insomnia, and chronic obstructive pulmonary disease. T. 92-93.[1] The Commissioner denied the applications initially and on reconsideration. T. 125-26, 161-62. After a hearing on December 3, 2014, the ALJ found claimant not disabled under the Act. T. 17-38, 45. The Appeals Council denied a request for further review and, as a result, the ALJ's decision became the final determination of the Commissioner. T. 1-3. The Commissioner's determination is now before the court for review.

---

[1] The administrative record filed by the Commissioner consists of 11 volumes (docs. 16-2 through 16-12) and has 765 consecutively-numbered pages. References to the record will be by "T.," for transcript, followed by the page number.

## FINDINGS OF THE ALJ

In her written decision, the ALJ made several findings relative to the issues raised in this appeal:

• Claimant meets the insured status requirements of the Act through December 31, 2017. T. 19, 283, 297.

• Claimant has not engaged in substantial gainful activity since December 15, 2012, the alleged onset date. T. 19.

• Claimant has the following severe impairments: degenerative disc disease with multi-level herniations, and a history of lumbar spinal surgeries, with the most recent occurring in 2009; chronic obstructive pulmonary disease with sleep apnea; obesity; chronic headaches; unspecified neurocognitive disorder; major depressive disorder; and generalized anxiety disorder. T. 20.

• Claimant has the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) except she should avoid concentrated exposure to pulmonary irritants, as well as hazards such as dangerous machinery or unprotected heights. She is limited to performing simple, routine, repetitive tasks. T. 25.

• Considering claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that claimant can perform. T. 37.

• Claimant has not been under a disability, as defined in the Act, from December 15, 2012, through May 15, 2015. T. 38.

## STANDARD OF REVIEW

A federal court reviews the "Commissioner's decision to determine if it is supported by substantial evidence and based upon proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997); *see also Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (*quoting Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)). Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence. *See Sewell v. Bowen*, 792 F.2d 1065, 1067 (11th Cir. 1986).

When reviewing a Social Security disability case, the court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner.]'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)

(*quoting Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)); *see also Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) ("In determining whether substantial evidence supports a decision, we give great deference to the ALJ's factfindings.") (*citing Black Diamond Coal Min. Co. v. Dir., OWCP*, 95 F.3d 1079, 1082 (11th Cir. 1996)).  The reviewing court, however, may not look "only to those parts of the record which support the ALJ[,]" but instead "must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ."  *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983).  Review is deferential to a point, but the reviewing court conducts what has been referred to as "an independent review of the record." *Flynn v. Heckler*, 768 F.2d 1273, 1273 (11th Cir. 1985).

The Social Security Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  To qualify as a disability, the physical or mental impairment must be so severe the plaintiff not only is unable to do her previous work, "but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]"  *Id.* § 423(d)(2)(A).

Pursuant to 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4), the Commissioner analyzes a disability claim in five steps:

1.    If the claimant is performing substantial gainful activity, she is not disabled.

2.    If the claimant is not performing substantial gainful activity, her impairments must be severe before she can be found disabled.

3.    If the claimant is not performing substantial gainful activity and she has severe impairments that have lasted or are expected to last for a continuous period of at least 12 months, and if her impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4.    If the claimant's impairments do not prevent her from performing her past relevant work, she is not disabled.[2]

5.    Even if the claimant's impairments prevent her from performing her past relevant work, if other jobs exist in significant numbers in the national economy that accommodate the claimant's RFC and vocational factors, she is not disabled.

---

[2] "[C]laimant bears the initial burden of establishing a severe impairment that keeps him from performing his past work." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

## FACT BACKGROUND AND MEDICAL HISTORY

Ms. Rudd offered testimony as to her health, daily activities, and work history at the December 2014 hearing before the ALJ. T. 45-91. She was born on December 15, 1965, and has a high school education. T. 92, 106. She worked as a certified nursing assistant from 1997 until she was terminated in 2012 for health-related absences.[3] T. 59-62, 309.

According to her hearing testimony, plaintiff lives alone in a house. T. 59, 65-66. On a typical day, she wakes up, eats breakfast, and does a few chores. T. 80-81. Her back pain requires her to periodically lay down to rest. T. 80-81. She can shop at the grocery store. T. 82. She has significant memory problems, which she believes stem from a stroke she suffered.[4] T. 69. After the stroke, however, she resumed working. T. 70. She believes the memory problems have gotten worse "in the last couple of years." T. 71.

During the hearing, the ALJ asked vocational expert John Barto-Black, Ed.D., whether jobs exist for an individual of claimant's age, education, and past work

---

[3] The ALJ noted "claimant was evasive in explaining why she was fired from her last job." T. 36. In a Function Report, claimant stated her supervisor had been disrespectful and she had not been treated fairly, but at the hearing, she admitted she had not been able to collect unemployment compensation. T. 36, 63-64, 340. The ALJ stated "[t]his equivocation at least raises the possibility that the claimant stopped working for reasons unrelated to her allegedly disabling impairments." T. 36.

[4] A September 30, 2008, MRI of the brain showed "[s]igns of previous small vessel ischemic disease in the right caudate nuclear consistent with a previous punctate well defined infarct[.]" T. 584.

experience, who is limited to performing sedentary work and simple, routine, repetitive tasks without concentrated exposure to pulmonary irritants and other hazards. T. 88-89. Dr. Barto-Black testified such an individual could perform work as a telephone quotation clerk, call-out operator, and document preparer. T. 90. Dr. Barto-Black stated his testimony was consistent with the Dictionary of Occupational Titles. T. 90.

Because the arguments raised in this appeal focus almost exclusively on the ALJ's consideration of plaintiff's mental impairment, the recitation of the medical evidence is largely limited to evaluations of plaintiff's psychological condition. On March 4, 2013, Paul Tritsos, Psy.D., evaluated Ms. Rudd at the Commissioner's request. T. 525-26. Plaintiff's prescriptions included Cymbalta, Prozac, Klonopin, and Trazadone. T. 525. She reported symptoms of poor sleep, poor focus, and irritability. T. 525. She could not recall 3 words after a short delay, and was unable to name the vice president or any large rivers. T. 525. Dr. Tritsos noted claimant "shifted intermittently in her chair due to discomfort/pain issues." T. 525. Tritsos diagnosed depressive disorder and concluded plaintiff "experienced trouble with concentration/focus, with variable impact on her day-to-day functioning." T. 526.

On September 15, 2014, David Smith, Ph.D., conducted a psychological evaluation at the request of plaintiff's counsel. T. 690-93. Dr. Smith reviewed claimant's treatment records and conducted memory testing. Dr. Smith noted: (1)

Ms. Rudd "shifted in her chair during the evaluation process" and "reported chronic pain"; (2) she "was oriented in all spheres" and "not confused"; (3) her "speech was overproductive, comprehensible, and rambling"; (4) her "concentration was impaired"; her "mood was depressed and anxious" and she "appeared despondent and hopeless." T. 690-91. Claimant "reported numerous symptoms of depression," including "sadness, moodiness, sleep disturbance, fatigue, distractibility, social withdrawal, grief, and suicidal ideation without plans or intent." T. 691.

Dr. Smith administered the Wechsler Memory Scale, which revealed "severe global memory deficits." T. 692. Scores for visual memory, visual working memory, immediate memory, and delayed memory fell in the "extremely low" range; the score for auditory memory fell in the "borderline" range. T. 692. The latter score showed Ms. Rudd's "ability to recall information presented orally is moderately impaired." T. 692. Dr. Smith concluded the results showed a decline from premorbid functioning, as claimant "would have been unable to maintain a career as a CNA with her current memory functioning." T. 692. Dr. Smith diagnosed "major depressive disorder, recurrent, moderate" and "unspecified neurocognitive disorder"; he felt claimant's "cognitive deficits and depression are significant occupational handicaps." T. 692.

On December 5, 2014, Dr. Smith completed Medical Source Statements concerning Ms. Rudd's functional limitations. T. 717-22. The statements indicated

claimant suffered from memory impairment, disturbance in mood, and "almost certainly" a loss of measured intellectual ability. T. 717. Dr. Smith concluded claimant had moderate limitations in activities of daily living and in maintaining social functioning, as well as marked difficulties with concentration, persistence, or pace, and repeated episodes of decompensation, each of extended duration. T. 718, 721.

After the hearing before the ALJ, plaintiff attended 2 consultative examinations. At the ALJ's request, E. Jacob, M.D., conducted a physical examination on December 30, 2014. T. 751-54. Ms. Rudd reported continuous and worsening back pain which radiated to the lower extremities and is exacerbated by prolonged sitting or standing; she could "walk one or two blocks" and started using a cane in the last year. T. 751. She stated she suffered from headaches that occurred every other day and could last for hours to days. T. 752. Dr. Jacob's examination revealed: (1) a positive straight leg raising test at 90 degrees when seated; (2) claimant "can walk without [a] cane but still limps"; (3) claimant "shows giveaway, jerky weakness in the right lower extremity"; and (4) "sensory loss for pinprick, touch, cold and vibration sensation in the right lower extremity" that "did not follow a nerve root pattern or peripheral nerve pattern." T. 753-54. When the sensory exam was repeated, plaintiff "reported reduced pinprick and cold sensation in the entire left half of the body including the face." T. 754. Dr. Jacob's impression was

"generalized body pain" and "low back surgery x2." T. 754. He also noted plaintiff had a history of tobacco abuse, COPD, and seizures. T. 754.

Dr. Jacob completed a Medical Source Statement indicating Ms. Rudd could frequently lift and carry 20 pounds, and, in an 8-hour work day, sit for 8 hours, stand for 2 hours with breaks, and walk for 1 hour. T. 744-45. Dr. Jacob felt plaintiff could sit for 1 hour at a time, stand for 30 minutes at a time, and walk for 15 to 30 minutes at a time. T. 745. The doctor based his conclusions on claimant's subjective complaints, the giveaway weakness of the right leg, and the anatomical/physiological sensory loss on the right lower extremity. T. 744-45.

On January 7, 2015, Julian Salinas, Ph.D., conducted a psychological examination, also at the ALJ's behest. T. 760-65. Claimant reported experiencing "ongoing problems with memory and concentration," depression, and "persistent worry and nervousness associated with her life circumstances." T. 761. Dr. Salinas reviewed the reports from Drs. Tritsos and Smith, interviewed claimant, and performed intelligence and memory testing. T. 760. The memory testing scores were "significantly lower than predicted by" the intelligence testing scores. T. 764. Dr. Salinas noted Ms. Rudd underwent the same memory testing in September 2014 with Dr. Smith, and thought "practice effects may have artifactually elevated her performance . . . ." T. 764.

On the same day, Dr. Salinas completed a Medical Source Statement indicating mild limitations with understanding and remembering simple instructions, carrying out simple instructions, and making judgments on simple work-related decisions. T. 757. Dr. Salinas concluded claimant had moderate limitations with understanding and remembering complex instructions, carrying out complex instructions, and making judgments on complex work-related decisions. T. 757. Dr. Salinas cited "significant memory deficits" as the cause of the limitations. T. 757.

ANALYSIS

Mental RFC

Ms. Rudd makes 3 arguments related to the mental-RFC determination and the hypothetical posed to the vocational expert ("VE"). She first claims the ALJ erred by failing to question the VE about the memory impairment identified by Dr. Salinas. (Doc. 25, p. 15-16). The ALJ assigned "significant weight" to Dr. Salinas' opinion, who examined plaintiff after the VE testified at the December 2014 hearing. Plaintiff asserts the ALJ should not have relied on the VE's testimony because the VE "was unaware of the additional mental limitations at the date of his testimony." (Doc. 25, p. 16).

"At step five, the Commissioner must determine that significant numbers of jobs exist in the national economy that the claimant can perform. An ALJ may make this determination either by applying the Medical Vocational Guidelines or by

obtaining the testimony of a vocational expert." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011) (citations omitted). "[F]or a [VE's] testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002).

Although plaintiff correctly notes Dr. Salinas' examination postdated the VE's testimony, plaintiff has not identified how Salinas' report was inconsistent with the ALJ's RFC assessment or the hypothetical posed to the VE, nor how it would have altered the VE's opinion. Dr. Salinas found claimant had only mild difficulties with understanding and remembering simple instructions, carrying out simple instructions, and making judgments on simple work-related decisions. T. 757. These findings are consistent with the ALJ's determination that claimant was limited to performing simple, routine, repetitive tasks ("SRRTs"). T. 25; *see Sheeks v. Comm'r of Soc. Sec. Admin.*, 544 F. App'x 639, 642 (11th Cir. 2013) (holding substantial evidence supported ALJ's finding that claimant could perform SRRTs when examining psychologist "concluded that Sheeks' 'ability to understand, retain, and follow simple instructions and perform simple, repetitive, and routine tasks appears mildly impaired'" and "[t]wo non-examining psychiatrists reported no significant limitations on Sheeks' ability to perform simple, routine, repetitive

tasks"). The ALJ, therefore, did not err by failing to question the VE about Dr. Salinas' post-hearing opinion.

Ms. Rudd also claims the ALJ's hypothetical did not account for her moderate limitations in maintaining concentration, persistence, and pace. "An ALJ must account for a claimant's limitations in concentration, persistence, or pace in a hypothetical question to the VE. An ALJ may account for these limitations by limiting the hypothetical to unskilled work 'when medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace.'" *Duval v. Comm'r of Soc. Sec.*, 628 F. App'x 703, 712 (11th Cir. 2015) (*quoting Winschel*, 631 F.3d at 1180). In addition, hypothetical questions may implicitly account for limitations in concentration, persistence, and pace. *See Winschel*, 631 F.3d at 1180-81 (citing examples); *see also Jarrett v. Comm'r of Soc. Sec.*, 422 F. App'x 869, 871 (11th Cir. 2011) (holding hypothetical indicating individual could "understand, remember, [and] carry-out simple . . . tasks and concentrate for brief periods of time" adequately accounted for finding of moderate difficulties in concentration, persistence, and pace).

Here, the ALJ determined at step 3 that claimant's mental impairments caused moderate limitations in maintaining concentration, persistence, and pace. T. 24. Although the ALJ did not expressly include these limitations in the RFC

determination or the hypothetical posed to the VE, the ALJ did limit claimant to SRRTs. T. 25, 88-90. And the ALJ specifically stated the RFC assessment reflected the degree of limitation the ALJ found at step 3. T. 25. The ALJ, therefore, concluded plaintiff could perform SRRTs despite the limitations in concentration, persistence, and pace.

Substantial evidence supports the determination claimant could perform SRRTs despite her limitations in concentration, persistence, and pace. Dr. Wise, a non-examining state agency consultant, concluded Ms. Rudd had moderate limitations in concentration, persistence, and pace, yet retained adequate mental RFC for SRRTs. T. 99, 105, 115, 121. Similarly, Dr. Butler, another state agency consultant, found plaintiff had moderate limitations in concentration, persistence, and pace, but could complete "simpler tasks and those not requiring extended concentration." T. 135, 140, 152, 157. Dr. Butler felt claimant was "able to produce [the] concentrated effort needed to complete simple tasks with adequate persistence, pace and reliability despite some occasional disruption as indicated."[5] T. 141, 158. In addition, Dr. Salinas' opinion was consistent with the ALJ's finding that claimant could perform SRRTs. T. 757. Thus, the ALJ's hypothetical to the VE adequately

---

[5] The ALJ assigned "partial weight" to the opinions of Drs. Wise and Butler. T. 34. The ALJ disagreed with the portions of their opinions that indicated claimant had no limitation in social functioning. T. 24, 34.

accounted for the moderate limitations in concentration, persistence, and pace the ALJ found at step 3.

Ms. Rudd also argues the VE's testimony conflicted with the Dictionary of Occupational Titles ("DOT") because the required reasoning levels for the jobs the VE identified did not conform to the limitation that she could only perform SRRTs. Relying upon this perceived conflict, plaintiff contends the VE's testimony did not provide substantial evidence for the ALJ's determination that plaintiff was not disabled.

The DOT describes the 3 jobs the VE cited—telephone quotation, call-out operator, and document preparer—as requiring a reasoning level of 3, which is defined as the ability to "apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and "deal with problems involving several concrete variables in or from standardized situations." U.S. Dep't of Labor, Dictionary of Occupational Titles (4th Ed. 1991), App. C § III. Plaintiff asserts a limitation to SRRTs is inconsistent with being able to "deal with problems involving several concrete variables."

In response, the Commissioner asserts claimant can perform the 3 jobs identified by the VE because all are unskilled with a specific vocation preparation of 2. *See* SSR 96-9p ("These mental activities are generally required by competitive, remunerative, unskilled work: understanding, remembering, and carrying out simple

instructions; making judgments that are commensurate with the functions of unskilled work—i.e., simple work-related decisions; responding appropriately to supervision, co-workers and usual work situations; [and] dealing with changes in a routine work setting."). The Commissioner further argues the reasoning levels in the DOT are "a subset of 'General Educational Development' (GED), which is the educational prerequisite for given jobs" not "the level of reasoning that is applied in the performance of a particular job's duties." (Doc. 26, p. 11).

Even assuming a conflict existed between the DOT and the VE's testimony, the testimony of the VE outweighs the DOT. *See Jones v. Apfel*, 190 F.3d 1224, 1229-30 (11th Cir. 1999) (holding "that when the VE's testimony conflicts with the DOT, the VE's testimony 'trumps' the DOT . . . because the DOT 'is not the sole source of admissible information concerning jobs'") (*quoting Barker v. Shalala*, 40 F.3d 789, 795 (6th Cir. 1994)); *Jones v. Comm'r of Soc. Sec.*, 423 F. App'x 936, 939 (11th Cir. 2011) ("Even assuming *arguendo* that the ALJ incorrectly found that the VE's testimony was consistent with the DOT, such error was harmless[]" because "a VE's testimony trumps the DOT to the extent the two are inconsistent."); *Miller v. Comm'r of Soc. Sec.*, 246 F. App'x 660, 662 (11th Cir. 2007) ("Even assuming that an inconsistency existed between the testimony of the [VE] and the DOT, the ALJ did not err when, without first resolving the alleged conflict, he relied on the testimony of the [VE]."). Because the ALJ's hypothetical to the VE included all of

Ms. Rudd's impairments, the VE's testimony constituted substantial evidence supporting the ALJ's decision. *See Peeler v. Astrue*, 400 F. App'x 492, 495-96 (11th Cir. 2010) ("If the hypothetical question posed by the ALJ contains all the claimant's impairments, the VE's testimony of other jobs the claimant can perform constitutes substantial evidence to support the Commissioner's decision.") (*citing Jones*, 190 F.3d at 1229).

Medical Opinion Evidence

Ms. Rudd claims the ALJ "provided no supportable justification for according 'significant' weight to Dr. Tritsos' report[,] while only according 'partial weight' to Dr. Smith's comparatively much more complete and informed report." (Doc. 25, p. 18). When determining the weight given to a medical opinion, the ALJ considers: (1) whether the doctor has examined or treated the claimant; (2) the length, nature, and extent of the doctor's relationship with the claimant or the frequency of examination; (3) the evidence and explanation supporting the opinion; (4) the opinion's consistency with the record as a whole; (5) the doctor's specialization; and (6) other factors which tend to support or contradict the opinion. *See* 20 C.F.R. § 404.1527(c).

The ALJ assigned "partial weight to the opinions of Dr. Smith." T. 32. The ALJ noted "both [Smith's] findings and the remainder of the medical record show that the claimant had limitations in memory functioning and experienced symptoms

of anxiety and depression," but "the record does not support the degree of limitation [Smith] endorsed."  T. 32.

Substantial evidence supports the weight assigned to Dr. Smith's opinion.  The ALJ found Dr. Smith's opinion inconsistent with the opinions of Dr. Tritsos and Dr. Salinas.  T. 32, 526, 757-59.  Plaintiff suggests the ALJ should not have relied on Dr. Tritsos' evaluation because Tritsos: (1) "did not perform memory function or any other type of testing"; and (2) offered no statement regarding Plaintiff's mental work-related limitations."  (Doc. 25, p. 18-19).  Although plaintiff's observations about Dr. Tritsos' evaluation are accurate, Dr. Salinas' opinion and the rest of the record provide substantial evidence for the ALJ's partial rejection of Dr. Smith's opinion.  Plaintiff claims "Dr. Smith's opinion is consistent with that of Dr. Salinas, and the most complete clinical examination and test administration of record," but the reports of Drs. Smith and Salinas are not completely consistent.  For example, Dr. Smith found claimant had moderate difficulties with maintaining social functioning, while Dr. Salinas concluded she had only mild restrictions with interacting appropriately with the public, supervisors, and coworkers.  T. 718, 721, 758.  Moreover, Dr. Salinas' opinion supported the ALJ's determination that claimant could perform SRRTs.  And Dr. Smith's evaluation was perhaps not "the most complete clinical examination and test administration of record," because Dr. Salinas examined claimant after Dr. Smith, reviewed Dr. Smith's and Dr. Tritsos'

evaluation reports, and conducted both intelligence and memory tests. T. 760. In contrast, Dr. Smith conducted only memory testing.

The ALJ also concluded "claimant's activities, which included caring for pets, driving, and caring for herself, were not consistent with [the] marked limitation in concentration, persistence, or pace" found by Dr. Smith. T. 32. Ms. Rudd argues these activities are not inconsistent with marked limitations because (1) her mother helped care for the pets and had to remind her to perform chores; and (2) she has poor hygiene, struggles to complete household chores, and cooks only simple meals with a microwave. T. 335-36, 374-75, 645, 761.

The ALJ recognized claimant reported needing "help and encouragement to perform some tasks" and "special reminders to take care of personal needs and grooming." T. 24. Although plaintiff may have received help completing some activities, the ALJ's rejection of Dr. Smith's finding of marked limitations in concentration, persistence, and pace based on plaintiff's activities of daily living is reasonable. In particular, claimant's ability to drive does not comport with a finding of marked limitations in concentration, persistence, and pace. *Cf. Anteau v. Comm'r of Soc. Sec.*, — F. App'x —, 2017 WL 4074529 at *3 (11th Cir. Sept. 14, 2017) (noting claimant "failed to show she had marked difficulties in maintaining concentration, persistence, or pace" in part because she "acknowledged the ability to handle her personal finances and drive a car, which inherently requires a minimum

ability to focus, understand, and remember while exercising independent judgment and decision-making skills").

In addition, the ALJ correctly found "that not all of Dr. Smith's opinions are well supported." T. 32. Specifically, the ALJ noted Dr. Smith "indicated that the claimant had marked limitation in the category of repeated episodes of decompensation, each of extended duration, yet there is nothing in the record to suggest that the claimant has experienced any extended episodes of decompensation." T. 32. Dr. Smith's own evaluation report noted "Ms. Rudd has never had a psychiatric hospitalization." T. 691. Although plaintiff argues the ALJ failed to identify other portions of Dr. Smith's opinion that were unsupported, the inconsistency between Smith's evaluation report and his Medical Source Statement regarding episodes of decompensation supports the ALJ's decision to assign Smith's opinion only partial weight.

In sum, the ALJ cited multiple reasons for discounting Dr. Smith's opinion, and the reasons are supported by substantial evidence. The ALJ, therefore, did not err when determining the weight afforded to Dr. Smith's opinion.

Claimant, however, also criticizes the ALJ's treatment of Dr. Salinas' opinion, asserting the ALJ "erred in inferring that increased memory testing scores due to the practice effect demonstrated less significant impairment." (Doc. 25, p. 18). Because Dr. Smith administered the Wechsler Memory Scale ("WMS") in September 2014,

Dr. Salinas felt "practice effects may have artifactually elevated [claimant's] performance on the" WMS Salinas administered in January 2015. T. 764. From Dr. Salinas' statement, the ALJ concluded "a logical implication is that the claimant's memory was not so impaired that it prevented her from improving her testing performance several months later." T. 34.

Ms. Rudd asserts "the ALJ should not have assumed that the practice effect indicated less of a functional memory impairment without seeking the advice of a medical expert" because "the practice effect is an artificial inflation of testing scores, not evidence of actual capacity for sustained improvement." (Doc. 25, p. 22). The ALJ, however, acting as a finder of fact, simply made a reasonable observation in response to an argument raised by plaintiff's representative: if plaintiff's memory testing score improved due to the practice effect, it could well be because she remembered the previous administration of the test. This type of reasonable inference does not show the ALJ misconstrued or misunderstood the evidence. And regardless of the impact of the practice effect, Dr. Salinas ultimately offered conclusions concerning claimant's work-related mental limitations that were consistent with the ALJ-formulated RFC. Plaintiff, therefore, has not demonstrated the ALJ's statement about the practice effect constitutes reversible error.

Plaintiff's arguments on the medical evidence would be quite appropriate if intended to advocate for or against an initial finding of fact by an ALJ. But this case

is not at that phase; it is now at the review level. A critique of a fact conclusion, even a good critique, does not equate with a lack of substantial evidence to support such a conclusion.

Credibility

Ms. Rudd argues the reasons the ALJ cited for finding plaintiff not credible are not supported by substantial evidence. (Doc. 25, p. 24-25). First, she asserts the ALJ failed to "find Plaintiff's allegations of memory difficulties not credible," and "it is unclear why the ALJ failed to address [the memory] impairment" despite "demonstrated significant memory deficits in two test administrations." (Doc. 25, p. 24). The ALJ, however, did consider plaintiff's memory impairment; the ALJ discussed the medical evidence (including the memory testing performed by Drs. Smith and Salinas), weighed the medical opinions, and concluded plaintiff could perform SRRTs despite her mental limitations. The ALJ did not err by failing to specifically state plaintiff's allegations of a disabling memory impairment were not credible. The ALJ's review of the medical evidence suffices.

Plaintiff also says the "ALJ's assessment of Plaintiff's residual back pain is similarly unsupported." (Doc. 25, p. 24). Plaintiff asserts: (1) she "is known to have a lumbar spine fusion, which resulted in ongoing neurological symptoms"; (2) "Dr. Jacob noted Plaintiff walked with a limp, had giveaway jerky weakness in the right lower extremity, and had reduced sensation in the right lower extremity"; (3) she

"was known to have post-surgical limitations and pain even after the 2009 fusion at L5-S1" and (4) "[i]n January 2010, [she] still had an antalgic gait, diminished range of motion, tenderness to palpation of the lumbar spine with trigger points, and muscle spasm." (Doc. 25, p. 24-25).

While plaintiff accurately describes the record concerning her spinal issues and complaints of pain, she neglects to mention she continued to work as a CNA until December 2012. Thus, the medical records from 2009 and 2010 do not undermine the ALJ's credibility determination. Likewise, Dr. Jacob's examination and opinion do not impugn the credibility determination. The ALJ gave significant weight to Dr. Jacob's opinion, which indicated claimant could perform sedentary work. T. 30. Because Dr. Jacob's opinion was consistent with the RFC assessment, the opinion does not conflict with the ALJ's determination that claimant's allegations of disabling pain were not entirely credible.

Accordingly, it is ORDERED:

1.     The decision of the Commissioner is AFFIRMED and plaintiff's applications for Disability Insurance Benefits and Supplemental Security Income are DENIED.

2.     The clerk is directed to enter judgment in favor of the Commissioner and close the file.

DONE AND ORDERED this 19th day of January, 2018.

/s/ *Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**